**MECHANICAL ICE TRAY CORPORATION
v. ABRAHAM & STRAUS, Inc.**

No. 8602.

District Court, E. D. New York.

March 8, 1940.

Orton & Griswold, of New York City (Warren S. Orton and Drury W. Cooper, both of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City, (Samuel E. Darby, of New York City, Marsten Allen and E. S. Allen, both of Cincinnati, Ohio, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action for the alleged infringement of patent No. 1,893,535 issued to Michael Kerin Buchanan, for ice cube pan lifter, granted January 10th, 1933, on an application filed September 28th, 1929.

The defendant interposed an answer raising the defenses of invalidity and non-infringement.

Claims Nos. 4, 13, 17 and 19 are relied upon.

Plaintiff has title to the patent in suit, and the notice required by law was given, before the commencement of this action.

The plaintiff is a Virginia corporation. The defendant is a New York corporation, with its place of business located at Brooklyn, New York, within this district, and is made a defendant herein because of its sale of ice trays manufactured by the Crosley Corporation, an Ohio corporation.

The application, on which the patent was granted, was filed September 28th, 1929, but the plaintiff claims, and is sustained, by competent legal evidence, conception as of an earlier date to wit: October 25th, 1927, and reduction to practice as of Christmas Day, 1927.

The alleged infringing device is Exhibit 2, which plaintiff contends constituted an infringement of each and all of the claims in suit, to wit: Claims 4, 13, 17 and 19 of the patent in suit.

The invention of the patent in suit relates to improvements in ice cube pan lifters for mechanical refrigerators.

The objects of the invention are described by the patentee, in his specification, as follows:

"An object of my invention is to provide an ice cube pan lifter that by simple mechanical means is raised from its supporting slide when frozen thereto for the purpose of removing the same from a freezing chamber.

"A further object of my invention is to raise the grid containing the frozen cubes from the base of the pan, breaking the connection of said frozen cubes to the base and sides of the pan, due to freezing.

"A further object of my invention is to provide a simple mechnical means which breaks the frozen connection between the bottom of the pan and the slide support in the freezing chamber in a sufficiently small movement to permit the pans to be placed close to the supporting slide, thereby doing away with guide rails on said supporting slide to prevent freezing to said supporting slide, and economizing the use of space.

"A further object of my invention is to provide an ice pan lifter that will raise the grid for permitting the easy filling of the pan with water for freezing purposes, since as is well known the grids of ice cube pans are fitted so closely to the walls and base of the pan that the passage of water from one cubical chamber to another is prevented.

"A further object of my invention is to provide a device of the type described which is simple in construction, has few parts and is not likely to get out of order easily."

It had been, for a long time prior to the date claimed as that of the conception of the invention herein, the custom of different manufacturers of household refrigerators, to equip them with freezing or refrigerating coils surrounding a sleeve in which two, or more, ice trays fitted, which trays were designed for the purpose of forming small blocks, or pieces, of ice, commonly identified as ice cubes. The ice trays generally consisted of a shallow pan in which was removably fitted an insert of intersecting partitions, called a grid, which was usually formed of one or more length members, with a plurality of cross partitions for giving form to the ice cubes.

The invention in the patent in suit relates to an improvement in such ice trays, for the purpose of releasing the formed ice cubes from the pan.

In order to determine whether the patentee made a patentable advance in the art, it is necessary to determine what the problem was, that was presented to him, and to do this we must consider the objectionable features inherent in the known forms of ice trays at the time of the patentee's conception of the patented invention. This may generally be divided into two groups; First, the tendency of the tray as a whole with its frozen cubes, under certain circumstances, to stick to its support in the refrigerator sleeve, and the difficulty and wastefulness of getting the

formed ice cubes out of the pan. This need not be further considered at the present time, except to remember that even though the tray and its supports become dry, when the tray is inserted into the evaporator, a thin layer of water of condensation was apt to form a frozen adhesive between the lower edges of the sides of the tray and the top of the support, necessitating the breaking of the adhesive by a forceful pull on the tray handle, so that the tray might be withdrawn from its support and thus· from the refrigerator. Second, the other objection to the old trays was the tenacity of the adherence of the ice cubes to the side walls and bottom of the pan. The adhesion between the blocks of ice, and the pan, resisted their separation. Various means had been used to get the formed ice cubes out of the pan, but the basis of all of them was the application of sufficient heat to break the ice seal, or adhesion, between several ice blocks, and the metal forming the sides and bottom of the pan. In general the application of heat was accomplished in one of three ways; First, by leaving the tray, after its removal from the refrigerator, exposed to room temperature for sufficient time to have the heat conducted through the metal to melt the ice, especially on the faces thereof, which adhered to the inner sides and bottom of the pan; second, by the application of hot or cold water from a faucet at the kitchen sink, while holding the tray upside down; third, by the salesman, who desired to make a sale, warming the bottom of the pan by the body heat of his hands to thaw out the connection.

There were many objections to all of these methods, briefly stated; length of time, germs falling on the cubes, personal discomfort of the housewife, wasteful expense in thawing out what it had cost the use of electricity to create, unsanitary condition of the ice, and discomfort of the salesmen.

The patentee of the patent in suit had been engaged in selling household electric refrigerators since 1926, and had become acquainted with the objections hereinbefore stated, and it was, while employed as a salesman for distributors of Frigidaire in Norfolk, Virginia, that he conceived, on October 25th, 1927, the invention disclosed in the patent in suit.

While the inventor was not technically trained, and did not have any mechanical training, yet, as a salesman of electric refrigerators, he knew all of the disadvantages of the old forms of ice trays. Apparently, all you had to do was to lift the grid and ice out of the pan, but he knew that it was impossible, by simple manual effort, for the housewife to lift the grid with the ice frozen thereto, out of the pan. The ice adhered to the metal pan and stuck pretty tight. He, therefore, conceived the idea that weak manual power, multiplied by a cam, leaver, or similar device, applied to one end of the ice seal, between a body of ice and a metal surface, would break the ice seal between the cubes and the walls to which they clung. Whether he knew the principle or theory of operation underlying his discovery, is not of moment.

The patentee, in his specification, described the object of the invention, as covered by the claims in suit, as follows:

"A further object of my invention is to raise the grid containing the frozen cubes from the base of the pan, breaking the connection of said frozen cubes to the base and sides of the pan, due to freezing."

"A further object of my invention is to provide an ice pan lifter that will raise the grid for permitting the easy filling of the pan with water for freezing purposes, since as is well known the grids of ice cube pans are fitted so closely to the walls and base of the pan that the passage of water from one cubical chamber ·to another is prevented."

The last quoted object of the invention relates to the detail of raising and lowering the grid (claim 4).

Plaintiff's ice cube pan lifter, as illustrated in the patent, includes a shallow freezing pan 1 containing a grid 5 forming with the walls and bottom of the pan a · plurality of freezing chambers 6. The grid is provided at its front end with a flange 20 projecting forwardly over a cam 17 journalled in the front end of the pan and actuated by a handle 23 for progressively lifting the grid and ice away from the bottom and side walls of the pan.

Claims 4, 13, 17 and 19 read as follows:

"4. An ice cube pan comprising a containing pan, a grid, and cooperating means on the grid and pan for raising and lowering the grid relative to said pan at will for breaking the ice cubes loose from the pan."

"13. In freezing apparatus for liquids, the combination of a tray for making ice

cubes, a grid within said tray adapted to form a plurality of ice cube molds, and cam means for raising the grid from the tray."

"17. In a freezing apparatus for liquids, the combination of a tray for making ice cubes, a grid within the tray adapted to form a plurality of ice cube molds and manually operated means for raising or lowering at will the grid in the pan for breaking the ice cubes loose from the pan."

"19. In a freezing apparatus for liquids, the combination of a tray for making ice cubes, a grid within the tray adapted to form a plurality of ice cube molds and means for raising one end of the grid in the pan at will for breaking the ice cubes loose from the pan."

Each of the claims recites the pan and grid as elements of the combination, and cites what plaintiff contends is the inventive feature, in each of said claims in the following language.

Claim 4 "cooperating means on the grid and pan for raising and lowering the grid";

Claim 13 "cam means for raising the grid from the tray";

Claim 17 "manually operated means for raising or lowering at will the grid in the pan for breaking the ice cubes loose from the pan"; and

Claim 19 "means for raising one end of the grid in the pan at will for breaking the ice cubes loose from the pan".

From a consideration of the patent in suit, it seems clear that the claimed invention relates to the use of the cam to lift one end of the grid within the tray and successively lift the grid and cubes until they are free from adhesion, to the bottom and sides of the tray.

What plaintiff really contends is; that the invention of the patent in suit covers the use of a cam in connection with the freeing of the grid and cubes, from the tray.

The following alleged prior art patents were introduced in evidence by the defendant on the trial:

Patent No. 419,718 issued to John H. Seitz, for mold for candies, granted January 21st, 1890, on an application filed March 1st, 1889. That patent relates to a mold for candies, which seems to me to be a nonanalogous art. It discloses a bed-plate A surrounding which, is a loose frame formed of vertically movable sides

C raised and lowered by means of a lever I. Partitions K, for forming the candy into compartments L, are secured to the sides C and are raised and lowered in grooves M in the bed-plate as the frame is moved by the handle I. The walls of the mold are greased, and with the frame elevated, the candy is poured into compartments L. After the candy is cooled and hardened in the mold spaces, by packed ice maintained below the bed-plate, the cross partitions K are lowered into concealed position in the bed of the mold by actuating the handle. The frozen bond between the grid and pan is broken by warming up the bottom of the pan. The candies are then brushed out of the mold.

It does not seem to me that this patent taught anything to the patentee of the patent in suit.

Patent No. 546,085, issued to John B. Wood for freezing-plate for ice-machines, granted September 10th, 1895, on an application filed September 7th, 1894. That patent relates to ice harvesters. The patent discloses a freezing tank 1, in which is located a pair of plates 2 between which are freezing coils 3. A marking, scoring, or kerf forming device 5 shown in Fig. 4 called a frame is located at the exposed side of each plate 2 and a lifting chain 8 is attached to the top and bottom of the frame. The blocks of ice handled by that machine were the usual large blocks of ice found in ice wagons back in 1894–1895, and of course, power was needed to handle them.

I am unable to find any grids in that patent, or any cooperating means on the grid and pan, for raising any grid as the same is defined in the patent in suit and, therefore, it seems to me that that patent taught nothing to the patentee of the patent in suit.

Patent No. 641,341 issued to Henry B. Sperry, for machine for making bricks, granted January 16th, 1900, on an application filed April 28th, 1899. That patent relates to a large machine for the manufacture of bricks, briquets, and tiling from various enumerated suitable materials. It has no relation to ice cubes, such as the housewife would require. That patent discloses a mold 13 in which the material for molding is introduced, preferably in a moist condition, and the top levelled off. The mold is conveyed to the drying floor and the supporting frame (Fig. 2) is placed over it. That frame includes a top 1,

formed of wood, depending from which are blocks or pushers 3, so arranged that the top 1 is elevated by the links 12 hooked on to the mold, which will then be lifted off the bricks. The elevation of the bricks is prevented by block 3, which will, in effect, push the formed bricks out through the open bottom of the mold 13.

I cannot see what application this patent can have, because the making of bricks is non-analogous art and although it shows the use of a hand lever to lift a mold, without lifting the articles molded thereby, there is no claim of that breadth in this suit, and it is too remote from the problem of ice adhesion.

Patent No. 953,249 issued to Jakob Widmer-Ackermann, for apparatus for molding liquids which solidify when cold, granted March 29th, 1910, on an application filed February 17th, 1908. That patent relates to a device particularly for packaging cocoa-nut butter. The apparatus consists of a vessel a with inwardly inclining walls b forming two rows of compartments open on their inner sides and which open sides are each closed by a wall e. The compartments are locked closed by means of a shaft or flat bar f mounted in the open space between the two walls e. When the apparatus is in use wrappers of parchment paper are inserted into the various compartments with an exact fit, the walls e closed, warm liquid cocoa-nut oil is poured into the wrappers and the water-cooled walls act to solidify the mass. After solidification of the mass in all the compartments the closure walls e are released by turning the bar f into an unlocking position, thus widening the compartments and permitting the ready removal of the filled wrappers.

This does not seem to me to be a pertinent reference, notwithstanding the fact that the bar f has some structural resemblance to the spreader bar of defendant's device.

Patent No. 961,781 issued to Francis E. Laverty for ice-harvester granted June 21st, 1910, on an application filed July 16th, 1909. That patent relates to a harvester for ice making machines employing the open tank system. In brief, the patent shows a tank 5 extending lengthwise of which, as best shown in Figs 1 and 6, are two spaced beams 11 carrying V-shaped cross cut devices or wedges 15. The exterior exposed surfaces are coated or otherwise treated with paraffin, wax or other such suitable material, interposed between the cross cut device 15 on opposite sides of the longitudinal beams 11 are separating members 17 each preferably formed in two sections, the upper section of which comprises a transverse head 18 having spaced depending wedge shaped bars 19 secured thereto and gradually increasing in thickness from the head 18 to the lower end of the bars. The lower section 20 of each separating member is also provided with a transverse head 21 from which depend a plurality of spaced wedge shaped bars 22 gradually decreasing in thickness. The bars 19 of the upper separating section and the bars 22 of the lower separating section are also coated with a layer of paraffin, wax or similar material. After the formation of the ice in tank 5, the screws 26 are rotated with a suitable tube forcing the upper and lower sections of each separating member in opposite directions, so as to fracture the ice which is already partly severed, or fractured by the bars 19 and 20. The ice is prevented from forming on the cross cut device and separating members by the coating of paraffin, or like substances thereon.

This does not appear to me to be a pertinent reference, as it certainly did not teach how to remove the ice cubes from the ice trays, and no teaching of how to split a large block of ice is pertinent, as the ice is already formed into the cubes of the size desired, in the patent in suit.

Patent No. 1,688,887 issued to Charles C. Spreen, assignor to Kelvinator Corporation, for mechanical refrigeration, granted October 23rd, 1928, on an application filed June 4th, 1926. That patent relates to a domestic mechanical refrigeration apparatus. It shows a pan or receptacle 11 in which is located a strip 12 bent upon itself to form a corrugated form of grid. The strip 12 is removable from the receptacle 11 to facilitate cleaning of the receptacle 11 and strip 12 and to facilitate, to some extent, the removal of the ice blocks. The strip 12 is formed resilient to further facilitate removal of the ice blocks, and also to normally hold the strip 12 in position within the receptacle.

Nothing is said in that patent about elevating the grid and no means are shown for manually elevating the grid, nor a multiplying power cam device for breaking the ice adhesion, as in the patent in suit.

Neither in the patent in suit, nor in defendant's device, is there a grid formed of

a strip of flexible metal, and in neither is the grid held in position by virtue of any resiliency.

Patent No. 1,691,481 issued to Jean Jacques and Allen R. Cosgrove, assignors to Martin-Parry Corporation for ice tray for electrical refrigeration, granted November 13th, 1928, on an application filed March 25th, 1927. That patent was granted almost one year after the completion of the invention of the patent in suit, but the application was filed about ten months before the granting of the patent in suit. That patent discloses an open top pan 1 having a removable cover. Spaced apart partitions 11 depend from the underside of the cover to form a grid which when introduced into the pan form therein a plurality of ice cells 12. One end of the cover cut back at 17 to provide space to receive the finger of the operator is shown. In their specification the patentees say "Referring to the modification shown in Figs. 5 and 6, it will be noted that the peripheral flange has been omitted, and that a cut-out portion 17 is provided for the insertion of the finger of the operator or of a device to separate the cover and grid from the tray."

It seems to me that it would be impossible to lift the grid with its frozen ice cubes from the pan by simple manual effort.

In the demonstration of defendant's model (Exhibit J) on the trial the defendant's witness did not operate it as taught in Jacques patent, but he did use one of defendant's long tray handles with one end thereof slightly under the grid cover at the opening marked 17, which he used as a lever, using the adjacent edge of the pan as a fulcrum and, of course, was able to ply up the grid from the pan.

I do not consider that patent, prior art, and will later refer to this patent, in my discussion of the alleged estoppels of the file wrapper and contents.

The defendant refers to the interference, Buchanan v. Geyer, Exhibit 27, the decision in which is not binding on this Court, but it may fairly be said that the Patent Office, when it allowed claim 13 in suit, after it had been especially called to its attention, was fully aware of the disclosure in the Jacques patent, and did not regard it as anticipatory.

Patent No. 1,729,625 issued to Carl Georg Munters, assignor to Electrolux Servel Corporation, for refrigerator, granted October 1st, 1929, on original application filed November 27th, 1926, and on the divided application filed September 9th, 1927. Only the ice tray of Fig. 3 of that patent need be considered, and it is described in the patent as follows: "The ice mold is formed with an inner corrugated member 41 which is adapted to form ice pieces of triangular cross section. Member 41 is made of a single strip of metal and permits removal of the ice pieces without running water over the ice mold. A simple twist of member 41 serves to unloosen the ice pieces."

While that patent shows how the ice pieces could be removed, by twisting member 41, it does not disclose any means for getting the grid 41 out of the pan, and that is necessary, if there is to be a subsequent twisting of the ice pieces from the grid. Of course, if the cam idea of the patent in suit be applied to one end of the grid 41, it might be raised where twisting could take place, but without that it would be necessary to chip off the ice from the opposite ends of the member 41, so as to get access to it in order to twist it.

None of the patents, so offered, by the defendant, as prior art, anticipate the patent in suit.

There was also cited in the file wrapper, but not pleaded or offered by the defendant in this case, the following patent, which I will further consider when discussing the alleged file wrapper estoppels.

Patent No 1,824,309 issued to Richard M. Storer, for mold for freezing liquids, granted September 22nd, 1931, on an application filed September 10th, 1928. In that patent, as filed September 10th, 1928, there was not contained any suggestion of power multiplying mechanism for elevating a grid to break the ice loose from the pan. In his specification the patentee said " * * * another object is to provide improved retention means for holding the frozen bodies in the tray member when the mold-member is removed." The original application disclosed a pan 5 in which is fitted a mold member 6 which consists of a plurality of units 7 of truncated pyramid form. In that patent means are provided in the corrugated bottom for increasing the ice adhesion to the pan and the problem of separation is thus made more difficult. There are disclosed in the original drawings, but not mentioned in the text, two D shaped wire members whose function is problematic.

The connection of the wires is such that no other function having been described, it might be assumed that they were anchoring means to hold the end walls in place, and prevent them from spreading out of position.

We will now consider the alleged estoppel shown in the file wrapper and contents.

■ Defendant bases much of its argument on the question of estoppel on arguments made by counsel. This, can not be done in this Circuit, as estoppel by action in the Patent Office can be based only on rejections to which the patentee submits.

As originally written, claim 4 read as follows: "4. An ice cube pan comprising a containing pan, a grid, and means for raising and lowering the grid relative to said pan, whereby the passage of water between the interstices of the grid is permitted at will." That claim was rejected by the Examiner on the patent to Jacques 1,691,481.

An amendment was submitted to by the patentee who amended that claim to read as follows: "4. An ice cube pan comprising a containing pan, a grid, and cooperating means on the grid and pan for raising and lowering the grid relative to said pan, whereby the passage of water between the interstices of. the grid is permitted at will." That amendment limited the claim to an ice cube pan, where there is a means on the pan, and a means on the grid, which cooperate together in an operation of lifting and lowering the grid, and estopped plaintiff from making that claim without that limitation.

■ It seems to me that it is too late now to argue that the Jacques patent is inoperative, or as to the date of invention, as the patentee having received the patent because of such amendment, he would be estopped even if it was done voluntarily.

By a later action the Patent Office, that amended claim 4, was rejected on the Storer patent 1,824,309. The applicant contended that his invention date was earlier than Storer, but in the face of that contention he amended the claim by cancelling the words "whereby the passage of water between" and substituting the words "at will for breaking the ice cubes loose from the pan", making the claim as so amended read as follows: "4. An ice cube pan comprising a containing pan a grid and cooperating means on the grid and pan, for raising and lowering the grid relative to said pan at will for breaking the ice cubes loose from the pan."

■ Storer showed a structure for lifting the grid out of the ice, leaving the ice in the tray, and plaintiff submitted to that rejection, and amended the claim as hereinbefore shown, in order to secure the patent in suit. Plaintiff claims that the patentee's date of invention of the patent in suit, antedated that of Storer, and as to that I believe that plaintiff is right, but that does not relieve from the estoppel, as plaintiff, if it insisted on its earlier date of invention, could, if the patent was rejected on that ground, have appealed in the Patent Office from such rejection. This the patentee of the patent in suit did not do, but amended as required to secure the patent in suit, and in so doing estopped himself and his successors in interest from contending that such claim of the patent in suit is not limited to an ice cube pan in which the mechanism is for "breaking the ice cubes loose from the pan".

Claim 13, originally numbered 14, by the patentee of the patent in suit, was suggested to him by the Examiner for the purposes of interference with one Geyer, and read as follows: "14. In freezing apparatus for liquids, the combination of a tray for making ice cubes, a grid within said tray adapted to form a plurality of ice cube molds, and cam means for raising the grid from the tray."

■ The patentee of the patent in suit was successful, and the claim remained unchanged, except that the number thereof was changed to 13. In the interference Geyer contended that Jacques showed the invention, but the Examiner overruled that contention, holding that as the claim called for a cam for raising the grid from the tray, "Jacques did not anticipate as he showed no cam as part of his mechanism." Such ruling of the Examiner is not an estoppel. As I construe the claim, however, it is limited to a cam which intentionally lifts the grid, to accomplish its purpose as distinguished from a device in which a cam may incidentally lift the grid, but is not directed to that purpose.

Claim 17, originally presented as claim 18, read as follows:

Claim "18. In a freezing apparatus for liquids, the combination of a tray for making ice cubes, a grid within the tray adapt-

ed to form a plurality of ice cube molds, and manually operated means for raising or lowering at will the grid in the pan for breaking the ice cubes loose from the pan and the grid."

The Examiner rejected this claim on Storer 1,824,309 and further ruled that the claim called for the feature of breaking the ice from the grid, which was not disclosed in the specification.

■ I do not agree with defendant that the patentee of the patent in suit was estopped by failure to make claims 7 or 9 of Storer. No interference was suggested, and Buchanan did not fail to accept any claim suggested by the Patent Office, as a basis for an interference. Buchanan did, in response to the Examiner's rejection, cancel the words "and the grid". This submission constituted a direct estoppel of any claim of function from the grid lifting of breaking the ice from the grid.

Claim 19, originally presented as claim 20, reads as follows: "20. In a freezing apparatus for liquids, the combination of a tray for making ice cubes, a grid within the tray adapted to form a plurality of ice cube molds, and means for raising one end of the grid in the pan at will for breaking the ice cubes loose from the pan and the grid."·

■ That claim received the same rejection by the Examiner as the claim last discussed, and the patentee by amendment cancelled the words "and the grid". It is unnecessary to repeat what was said with reference to claim 17, as it applies here, and by that amendment Buchanan estopped himself and his successors from claiming any invention in breaking "the ice cubes from the grid". The estoppels, I have found were, by reason of rejections by the Examiner, accepted by the patentee, and amendments made to conform, and as to the patents cited as references on which such rejections were based, it matters not whether the date of conception of any of the patents cited as references was prior or subsequent to that of the patent in suit, as the patentee in the patent in suit did not take any appeal in the Patent Office, but amended and accepted the patent with the limitations I have found and is bound thereby.

This brings us to the question of infringement.

The defendant's device is claimed to be constructed according to the Crosley patent 2,143,977, and applying that to Exhibit 2, the alleged infringing device, we find that it comprises a pan 1 in which is located a grid, and as the patentee says:

"The grid itself is composed of a central longitudinal divider 3 which is of substantially V-shaped cross section, the apex being at the bottom. The walls of the divider flex along a line extending along the apex of the V. The member 3 is slotted at intervals as shown at 4 and these slots carry the transverse fins 5 * * *."

"The actuating member is shown at 7 and comprises a cam rod or cam bar of non-circular cross section."

"Any desired means may be provided for turning the member 7. I have shown this member bent at right angles as shown at 9, and as indicated in Fig 1, I prefer to provide a handle or tool 10 which is simply a lever with a socket adapted to slip over the portion 9 of the member 7. If now the tool 10 is placed upon the portion 9, the member 7 may be slightly turned or rotated as indicated in Fig 4. This causes the two sides of the divider 3 to be spread apart, as shown in Fig 4 whereby the ice cubes are forced outwardly parallel with a sort of wedging action and are caused to break loose."

■ The device of the defendant performs functions which are not performed by the device of the patent in suit, but that of itself would not relieve from infringement, if in their performance the defendant availed itself of a cam to lift one end of the grid within the pan, with the cubes or ice block still frozen in the grid.

I can not find that the plaintiff is entitled to monopolize the use of a cam, but only the use of a cam for the purposes claimed in the claims in suit, as they are limited by the prior art, and the file wrapper estoppels, as I have found them. Much evidence was offered, and counsel for the respective parties have argued at length as to whether in the operation of the defendant's device one end of the defendant's grid was lifted, and it is unnecessary to refer to it in detail, because if there be any lifting it is so small, three one thousandths of an inch, as to clearly convince me that it is incidental, and not di-

rected, and even if the claims in suit of the patent in suit may technically read upon defendant's device, they do not in fact and substance read on the defendant's device.

Infringement in this case must be of broader gage.

The patent in suit made but a small advance in the art, as it is the freeing of the ice cubes for use as practiced by defendant that would overcome the many objections to the old methods, which I have hereinbefore described.

Defendant's device, however, in freeing the cubes for use made a very substantial advance in the art and overcame the many objections to the old method.

In operating the defendant's device, in which is ice frozen in a tray fitted with the grid of defendant, the operator rotates the expander bar in the central rib to break the frozen bond of the ice cubes with all parts of the receptacle, tray, central rib and cross pieces or fins. Normally the central V-shaped rib is sprung together at the top. By rocking the expander bar a spreading of the V at the top results in expanding the rib by less than a tenth of an inch, which slight movement is enough to break the frozen bond of the cubes. The slight outward and downward tilting of the walls of the central rib strips them from the inner faces of the ice cubes. The cubes are pushed outwardly a slight distance along the rigid cross pieces or fins, which taper outwardly, and the slight movement of the cubes breaks the bond with the cross pieces or fins. The cubes move slightly along the bottom of the tray, breaking their bond to the bottom of the tray, and the side walls of the tray bend outwardly and downwardly, thus stripping away from the ice cubes enough to break the frozen bond.

The expander bar ceases to function the instant the frozen bond of the cubes with the grid and tray is broken, and there is no lifting movement of the grid with reference to the tray that has anything to do with the freeing of the frozen bond, of the ice cubes in the tray. Of course, the frozen bond being broken the grid can be lifted out, and the cubes that have not fallen out can be picked out with the fingers of the lifter, but the rotation of the cam bar results only in an expanding action.

Each of the claims in suit of the patent in suit is limited to the feature of using a cam for raising a grid in a tray.

 The expanding bar of the defendant's device is a cam, but is not used nor is it directed to be used for raising a grid in a tray, and even if plaintiff be correct in it's contention that in the defendant's device in the presence of ice, there is some upwardly movement of the grid, of extremely small proportions, when the bond of the ice is broken, in expanding the grid, there is no such structure camming up of the grid from the tray thereby breaking the ice from the tray as is all that is taught and shown in the patent in suit, nor equivalent thereof. Defendant's structure is mechanically different from that of the patent in suit, works in a different way, and accomplishes a different result. The difference is not one only of form, but a substantial difference in substance.

The defendant does not infringe.

A decree may be entered in favor of the defendant, against the plaintiff, dismissing the complaint on the merits with costs.

Settle decree on notice.

Submit proposed findings of fact, and conclusions of law, in accordance with this opinion, for the assistance of the court, as provided by the Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c, and the Civil Rules of this Court.